UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BY SYLVERE LLC and SYLVERE AZOULAI,

Plaintiffs,

-against-

NESTLÉ NESPRESSO S.A. and CMGRP France SAS d/b/a FUTUREBRAND,

Defendants.

**<u>OPINION AND ORDER</u>**

25-CV-00619 (PMH)

PHILIP M. HALPERN, United States District Judge:

By Sylvere LLC ("By Sylvere") and Sylvere Azoulai ("Azoulai," and together, "Plaintiffs") commenced this action against Nestlé Nespresso S.A. ("Nestle") and CMGRP France SAS d/b/a Futurebrand ("Futurebrand," and together, "Defendants") on January 21, 2025. (Doc. 1, "Compl.").[1] Plaintiffs, with the Court's leave, filed an amended complaint (Doc. 23, "AC"), and subsequently, a second amended complaint (Doc. 33, "SAC"), the operative pleading. The SAC presses one claim for relief for breach of contract. (*See id.*).

Nestle moved to dismiss the SAC under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and based upon a "*forum non conveniens*" theory, in accordance with the briefing schedule set by the Court. (Doc. 51; Doc. 53, "Novel Decl."; Doc. 54, "Heisel Decl."; Doc. 55, "Zarlenga Decl."; Doc. 56, "Def. Br."). Plaintiffs filed opposition thereto (Doc. 59, "Azoulai Decl."; Doc. 60, "Averous Decl."; Doc. 61, "Abel Decl."; Doc. 62, "Levy Decl."; Doc. 63, "Pl. Br."; Doc. 64, "Pederzini Decl."), along with a purported "Cross Motion" for leave to file a Third Amended Complaint (Doc. 57; Doc. 58; Doc. 72, "Amended McCallion Decl."). The motion to dismiss was fully submitted upon the filing of Nestle's reply brief (Doc. 65, "Reply").

[1] Defendant Futurebrand has not appeared in this action, despite Plaintiffs' representation that it was served on October 2, 2025. (Doc. 50).

For the reasons set forth below, Nestle's motion to dismiss is DENIED and Plaintiffs' motion for leave to file a third amended complaint is DENIED.

**BACKGROUND**

The Court, for purposes of deciding the pending motions, accepts as true the well-pled factual allegations in the SAC and draws all reasonable inferences in Plaintiffs' favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Sylvere Azoulai, is a United States Citizen, resident of New York, and the principal, founder, and sole member of By Sylvere LLC, a New York limited liability company. (SAC ¶ 2). Azoulai is a professional photographer, having conducted photoshoots for prestigious fashion and commercial brands, and has worked in this capacity for the past approximately 20 years. (*Id.*). Azoulai has made contracts with Nestle and its "branding agency," Futurebrand, for the production of photoshoots and the use of the resulting visuals and iconography. (*Id.* ¶¶ 3, 11). Nestle is a foreign entity organized and existing under the laws of Switzerland (Novel Decl. ¶ 3), and a well-known producer of coffee and espresso products sold under the "Nespresso" brand, with a business address located in Switzerland (SAC ¶¶ 3, 11). Futurebrand, on the other hand, is located in France. (*Id.*).

Plaintiffs allege a longstanding relationship with Defendants, premised upon Plaintiffs' production and licensing of visuals and iconography for use by Nestle for branding and marketing purposes, both in a digital platform and for use at Nestle's physical brick and mortar Nespresso boutiques. (*Id.* ¶¶ 7-9). Plaintiffs claim the contractual and business relationship between Defendants, and specifically, between both Futurebrand as agent of Nestle, and with Nestle directly, lasted from prior to 2008 through and up to approximately 2023. (*Id.* ¶¶ 7-10). All of the

visuals produced by Plaintiffs were completed pursuant to "Purchase Orders," and the visuals were created entirely at Plaintiffs' studio in New York. (*Id.* ¶ 11).

The "Purchase Orders" allegedly provided for durational usage rights by Defendants, that generally included terms dictating the timeframe for usage by Defendants, and imposed fees and penalties on usage outside the allowed duration. (*Id.* ¶¶ 13, 17). Plaintiffs highlight one "Purchase Order" in particular, dated November 2, 2010, that allegedly provided Defendants with usage rights for 40 visuals that Azoulai had produced in his studio in New York, at the direction of Nestle and Futurebrand as agent, in exchange for Plaintiffs receiving "€239,800." (*Id.* ¶¶ 14-15). This particular "Purchase Order" imposed "additional fees and penalties" in the event Defendants breached the agreement by utilizing the visuals past the "initial period of three years," and allegedly allowed for any "further usage subject to an extension agreement between the parties." (*Id.* ¶ 15).

Plaintiffs claim that throughout the parties' relationship, Defendants breached the "Purchase Orders," on a "regular and flagrant basis," but when Plaintiffs notified Joanna Van Der Linden (then Retail Communication for Nestle), Ms. Van Der Linden would "arrange[] for the prompt payment of additional usage rights fees and penalties by Defendant Nespresso directly as per the parties' agreement." (*Id.* ¶¶ 12, 17). Prior to 2023, Plaintiffs allege that Nespresso regularly paid Plaintiffs for the "additional fees and penalties" incurred by violative usage of the visuals outside the durational scope of the "Purchase Orders." (*Id.* ¶¶ 16-20). Plaintiffs attach eight exhibits to the Second Amended Complaint consisting of invoices Plaintiffs allegedly billed to Nespresso for visuals being utilized outside their durational "rights coverage[s]." (*Id.* ¶¶ 21-28, Exs. A-H). As is relevant here, Plaintiffs allege violations as to 38 visuals, all covered by the

November 2, 2010 "Purchase Order" or applicable "extension agreements." (*Id.* ¶¶ 14-15, 20, 39).[2] Plaintiffs claim that each agreement at issue "contained terms for the payment of additional fees and penalties in the event that Defendants used Plaintiffs' visuals outside the usage rights prescribed," and claim they have been damaged in an amount no less than $1 million through the breaches. (*Id.* ¶¶ 39-40).

This litigation followed.

## STANDARD OF REVIEW

I. Federal Rule of Civil Procedure 12(b)(2)

"A party may move to dismiss an action for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Although it is a plaintiff's burden to establish jurisdiction in response to such a motion, "the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84 (2d Cir. 2013).[3] At this stage, "[i]n order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 167 (2d Cir. 2013); *NuMSP, LLC v. St. Etienne,* 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) ("[T]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be factually supported."). "Such a showing entails making

[2] By Stipulation and Order dated September 9, 2025, Plaintiffs stipulated to withdraw their claim as to 11 of the 38 visuals alleged in the SAC as time barred. (*See* Doc. 41). The Court declines to adopt, at this time, Nestle's contention that because the invoice exhibits attached to the SAC only identify 34 "distinct visuals," the amount of visuals at issue are 11 less than 34, or 23, visuals. Plaintiffs plead in the SAC that there are 38 visuals at issue (SAC ¶¶ 20, 39), and the Court takes this sum as true, as it must for purposes of Nestle's motion to dismiss. Accordingly, 27 visuals remain at issue.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). The Court "may consider materials outside the pleadings" in analyzing a motion to dismiss under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "However, where a defendant rebuts a plaintiff's unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiff does not counter that evidence—the allegation may be deemed refuted." *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 480 (N.D.N.Y. 2019).

"Assessing whether Defendants are subject to specific long-arm personal jurisdiction—that is, jurisdiction based upon their contacts with the state—is a two-step process." *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 WL 5505351, at *3 (S.D.N.Y. Sept. 10, 2020). "First, the Court must determine whether personal jurisdiction exists under New York's long-arm statute, C.P.L.R. § 302." *Id.* (citing *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)). "Second, if New York's particular requirements are satisfied, the Court 'analyze[s] whether personal jurisdiction comports with due process protections established under the Constitution.'" *Id.* (quoting *Eades*, 799 F.3d at 168).

II. Forum Non Conveniens

The doctrine of *forum non conveniens* stems from the principle that "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a statute." *Curtis v. 360 Business Management, Inc.*, No. 25-CV-03415, 2025 WL 3158702, at *4 (S.D.N.Y. Nov. 12, 2025). The defendant invoking this doctrine "bears a heavy burden in opposing the

plaintiff's chosen forum." *Quantum BioPharma Ltd. v. CIBC World Markets, Inc.*, No. 24-CV-07972, 2026 WL 861678, at *13 (S.D.N.Y. Mar. 30, 2026) (citing V*illella v. Chemical & Mining Co. of Chile Inc.*, No. 15-CV-02106, 2017 WL 1169629, at *5 (S.D.N.Y. Mar. 28, 2017)). There is a "strong presumption in favor of the plaintiff's choice of forum," especially where the choice is plaintiff's "home forum." *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005). The Second Circuit has set forth a three-step test to guide the district court's discretion: (1) "determine[] the degree of deference properly accorded the plaintiff's choice of forum"; (2) "consider[] whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute"; and (3) "balance[] the private and public interests implicated in the choice of forum." *Wamai v. Indus. Bank of Korea*, No. 21-1956-cv, 2023 WL 2395675, at *2 (2d Cir. Mar. 8, 2023) (citing *Norex Petroleum Ltd.*, 416 F.3d at 153). The "decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court." *Quantum BioPharma Ltd.*, 2026 WL 861678, at *13 (citing *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996)).

III. Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

IV. Documents Considered on a Rule 12(b)(6) Motion to Dismiss

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)); *Cortec Indus.,*

*Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-05600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019). Further, where a document is of "disputed authenticity," the Court may not consider it on a motion to dismiss. *See Azzolini v. Marriott Intern., Inc.*, 417 F. Supp. 2d 243, 246 (S.D.N.Y. 2005) (collecting cases).

Where a document is not attached to the complaint or integral thereto such that it can be considered on a motion to dismiss, or where a document's authenticity is disputed, a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d). All parties submitted declarations and extraneous documents for the Court's consideration, and, to the extent necessary to the Court's analysis, they are detailed below.

Nestle submitted the following extraneous documents: (i) four "Purchase Orders," dated November 9, 2010, December 7, 2010, December 17, 2010, and July 13, 2016 (Heisel Decl., Exs. 1-3, 5), and a "November 2010 Proposal," dated November 2, 2010 (*id.*, Ex. 4), all in French (together, "French Purchase Documents"); (ii) the French Purchase Documents, apparently translated into English (Zarlenga Decl., Ex. B, C, "English Purchase Documents," and together with the French Purchase Documents, "Annexed Purchase Documents"); (iii) a purported PDF webpage including an "About" description of Plaintiff Azoulai (*id.*, Ex. D, "About Webpage"); and (iv) emails between Plaintiffs' counsel and Nestle's counsel (*id.*, Ex. A). In addition to the

Zarlenga and Heisel Declarations, Nestle also submitted the declaration of third-party Aline Novel. (Doc. 53).

Separately, Plaintiffs attached nine exhibits to their Second Amended Complaint, including eight alleged invoices (SAC, Exs. A through H, "Invoices"), and a document entitled "Nestle Media Library" (*id.* Ex. I). Plaintiffs include five declarations in opposition to Nestle's motion, one of which is Plaintiff Azoulai's Declaration (Doc. 59), while the remaining four are declarations of third parties Marie-Laure Averous, Pierre Abel, Frederic Levy, and Eva Pederzini (Docs. 60, 61, 62, 64).

As an initial matter, the Court may, and does, consider the exhibits Plaintiffs attach to their Second Amended Complaint.[4] However, the Court declines to consider all of the other documents noted above as improper on a motion of this ilk; and finds it inappropriate to convert to a motion for summary judgment.

The motion papers demonstrate the existence of disputes as to the authenticity and accuracy of the Annexed Purchase Documents. (Def. Br. at 15-19; Pl. Br. at 17-22; Reply at 5-7). Thus, the Court declines to consider any of these documents in deciding the motion to dismiss. *See Sternkopf v. White Plains Hosp.*, No. 14-CV-04076, 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015) ("[I]n addition to the requirement that the document be 'integral' to the complaint: (1) 'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document;' and (2) '[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'") (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006))). At

[4] The Court also considers the declarations submitted by both parties, to the extent they include allegations bearing on the personal jurisdiction/*forum non conveniens* prong of Nestle's motion. *See Dorchester Fin. Sec., Inc.*, 722 F.3d at 86. As detailed *infra*, the Court declines to consider such declarations on the Rule 12(b)(6) prong of Nestle's motion.

the motion to dismiss stage and without the benefit of discovery, the Court may not, and does not, make a factual finding as to the terms or scope of the purchase orders at issue based on documentary evidence, and will not pick between the Parties' respective arguments as to what documents constitute the true and accurate contracts in this action. It is not "clear that there exists no material disputed issues of fact" as to the Annexed Purchase Documents. *See Essilor International SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 74 (S.D.N.Y. 2023). The record must be developed as to the terms and scope of these disputed documents—the Court declines to leapfrog the discovery stage of this case.

The Court also declines to consider any of the Plaintiffs' submitted declarations, because as Nestle notes, Plaintiffs are not permitted to "shore up" their Second Amended Complaint "through extrinsic documents submitted in opposition to a defendant's motion to dismiss." (Reply at 4 (citing *Matson v. Bd. of Educ.*, 631 F.3d 57, 69 (2d Cir. 2011)). Each of the declarations submitted by Plaintiff Azoulai and third parties Averous, Abel, Levy, and Pederzini, improperly add additional factual material that the Court may not, and will not consider at this stage. *See Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018). Finally, the Court declines to consider the About Webpage and the emails between counsel, as they are not incorporated in the Second Amended Complaint by reference, not "integral" thereto or relied upon by Plaintiffs, and not documents of which the Court may take judicial notice. *See Heckman*, 568 F. App'x at 43.

## **ANALYSIS**

Nestle moves to dismiss the Second Amended Complaint on the grounds that this Court lacks personal jurisdiction over it; requests in the alternative to transfer venue to Switzerland on grounds of *forum non conveniens*; and, in the event the Court determined that it could fairly exercise personal jurisdiction over Nestle and declines to transfer the matter pursuant to *forum non*

*conveniens*, dismiss the breach of contract claim as a matter of law. The Court considers each of Nestle's arguments in turn.

I. Personal Jurisdiction

The first branch of Nestle's motion seeks dismissal of Plaintiffs' claim on the ground that the Court lacks personal jurisdiction over Nestle. Nestle contends that it should not be subject to specific jurisdiction in New York because it is a foreign corporation and Plaintiffs' allegations are "insufficient to demonstrate that [Nestle] 'projected itself into the New York market,'" thus failing the "strictures of New York's long arm statute" (Def. Br. at 9-11). Nestle further argues that Plaintiffs' attempts to impute an alleged "agency theory" based on Futurebrand's activities fail as the associated allegations are "conclusory and non-specific." (*Id.* at 12-14).[5] The Court disagrees.

New York's long-arm statute, New York Civil Practice Law and Rules ("CPLR") § 302(a)(1), provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state."

When applying the "transacting business" prong of N.Y. C.P.L.R. § 302(a), the Second Circuit has explained that courts must examine whether Plaintiff has pled that Defendant "(1) . . . transact[ed] any business in New York and, if so, (2) whether the cause of action aris[es] from such a business transaction." *Licci*, 673 F.3d at 60 (third alteration in original, internal quotation marks omitted). To guide the analysis as to the first prong, the Second Circuit has "identified four non-exclusive factors" for courts to assess:

---

[5] Nestle also argues that Plaintiffs have impermissibly engaged in "group pleading," as an additional basis for Plaintiffs' failure to establish personal jurisdiction over Nestle. (Def. Br. at 7-8). As detailed with more specificity, *infra*, Plaintiffs have not engaged in impermissible group pleading, as Plaintiffs have sufficiently pled allegations to show personal jurisdiction on its face.

> (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [parties to that contract] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (alterations in original)).

Although the Court is guided by the four factors above, "the overriding criterion" for the first step of N.Y. C.P.L.R. § 302(a)(1) analysis "is whether the entity purposefully avails itself of the privilege of conducting activities within New York." *Id.* at 9-10 (internal quotation marks omitted). The answer to this question is necessarily fact-dependent and the Court must consider "the totality of the circumstances . . . in determining whether a defendant has 'invok[ed] the benefits and protections of [New York's] laws.'" *Id.* (quoting *Licci*, 673 F.3d at 61-62 (first alteration added)). In certain circumstances, "[a] single act within New York will . . . satisfy the requirements of section 302(a)(1)." *Licci*, 673 F.3d at 62 (2d Cir. 2012); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) ("[C]ourts have explained that section 302 is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."). "Other times, however, when an individual act in New York will not suffice, an ongoing course of conduct or relationship in the state may." *Id.* After "[l]ooking to the factors outlined by the Second Circuit," the Court concludes that Plaintiffs have sufficiently alleged Nestle's acts were "purposeful" and alleged an "ongoing course of conduct or relationship" in New York sufficient to satisfy the requirements of § 302(a)(1).

Taking Plaintiffs' allegations as true, as the Court must at this stage, Azoulai was known to Nestle as a "key creative collaborator for the brand's global visual identity," and has contracted with Nestle for over two decades, primarily transacting with Futurebrand, but also, on "at least 20 occasions," with Nestle directly. (SAC ¶¶ 7-10; Levy Decl. ¶ 3). Additionally, multiple employees of Nestle travelled to Azoulai's studio in New York to assist and "facilitate" the photoshoots of the visuals, including for the photoshoot that allegedly generated a majority of the visuals at issue in this action. (SAC ¶¶ 12-15; Pederzini Decl. ¶¶ 1-6; Levy Decl. ¶ 3). Through these communications, and through Nestle sending its employees to New York to facilitate photoshoots pursuant to the various Purchase Orders, Defendants "made the conscious decision to reach into New York and procure business and services [from Plaintiffs] in excess of $2 million." (SAC ¶¶ 12-14; Abel Decl. ¶¶ 5-7; Pederzini Decl. ¶¶ 6-7, 10). Additionally, while Plaintiffs do not expressly state that the agreements require Nestle "to send notices and payments into the forum state," Plaintiffs pled that in fact, "all payments were made to bank accounts maintained by Plaintiffs in New York." (SAC ¶ 8).

Plaintiffs do not plead the existence of a New York choice of law clause, which weighs against the invocation of personal jurisdiction. However, the Court, considering the totality of the circumstances, finds that Nestle engaged in a continuous pattern of behavior to demonstrate that it transacted business in New York by which it satisfied the "overriding criterion," namely, that it "purposefully avail[ed] itself of the privilege of conducting activities within New York." *Rosenblatt*, 750 F. App'x at 10.

After sufficiently establishing the existence of a business transaction, the Court must determine whether "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines*, *Inc. v. Walker,* 490 F.3d 239,

246 (2d Cir. 2007) (quoting *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)). As discussed *supra*, Nestle willfully engaged in a pattern of business within New York by continuing to contract with Plaintiffs over the course of multiple decades for the generation and use of Plaintiffs' iconography and visuals. Plaintiffs' claim arises out of Nestle's alleged improper continued use of certain visuals outside the alleged scope of a series of such Purchase Orders, where Plaintiffs generated the visuals in New York, at the direction of Nestle. Plaintiffs' allegations, accepted as true for the purposes of this motion, thus place the breach of contract claim and associated transactions directly within the state of New York and establish a "substantial relationship" between the two. *Id.* Accordingly, as Nestle's New York transactions with Plaintiffs sufficiently indicate an articulable nexus and substantial relationship to Plaintiffs' breach of contract claim, New York law facilitates the exercise of personal jurisdiction over Nestle. *See Cohen v. Maher*, No. 16-CV-00265, 2017 WL 663553, at *5 (S.D.N.Y. Feb. 17, 2017) (holding, *inter alia*, that given the totality of the circumstances and where "defendants sought out a company and individual they knew to be New Yorkers located in New York," and "traveled to New York to meet with plaintiffs regarding th[e] [anticipated] business," such allegations were sufficient to find an "articulable nexus and substantial relationship to the cause of action").

Once minimum contacts are established, the Court must also determine whether exercising personal jurisdiction over the Defendant "would comport with fair play and substantial justice." *Licci*, 732 F.3d at 170 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Factors that the Court considers in this analysis include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the

> most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloe*, 616 F.3d at 164.

Nestle makes no argument as to this portion of the personal jurisdiction analysis. (Def. Br. at 12 ("[g]iven that Plaintiffs cannot satisfy the first two prongs of CPLR 302(a)(1), the Court need not consider whether jurisdiction is permissible as a matter of constitutional due process")). In any event, the factors weigh in favor of subjecting Nestle to personal jurisdiction in New York, as Plaintiffs have alleged sufficient "minimum contacts" between New York and Nestle, and as such exercise would not be unreasonable under the Due Process Clause. *See Chloe*, 616 F.3d at 164; *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 107-08 (S.D.N.Y. 2015) ("Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met.").

Nestle's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is, accordingly denied.[6]

II. Forum Non Conveniens

Nestle argues that Switzerland is the more convenient forum for this litigation, as Plaintiffs' choice of forum, New York, has "at best, a peripheral connection to this dispute," Switzerland provides an adequate alternative forum, and both the private and public interest factors weigh in favor of this case being adjudicated in Switzerland. (Def. Br. at 19-23). The Court disagrees, as

[6] Plaintiffs also proceed under an agency theory of personal jurisdiction. The Court need not reach the parties' arguments concerning whether Futurebrand is properly considered Nestle's agent for jurisdictional purposes, in light of the analysis and conclusion *supra*.

Nestle has failed to carry its "heavy burden" in opposing Plaintiffs' chosen forum. *See Quantum BioPharma Ltd.*, 2026 WL 861678, at *13.

The Court, in analyzing this prong of Nestle's motion, considers the *Norex* factors: (1) "the degree of deference properly accorded the plaintiff's choice of forum"; (2) "whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute"; and (3) "balance[] the private and public interests implicated in the choice of forum." *Wamai*, 2023 WL 2395675, at *2 (citing *Norex Petroleum Ltd.*, 416 F.3d at 153).

Plaintiffs' choice of forum is afforded the "greatest deference," as New York is Plaintiffs' "home forum," (SAC ¶¶ 2, 11). *Palacios v. The Coca-Cola Co.*, 757 F. Supp. 2d 347, 352 (S.D.N.Y. 2010). While the visuals and iconography developed by Plaintiffs were not utilized by Nestle in New York, Plaintiffs' allegations that all of these visuals were "created in Plaintiffs' studio in New York," pushes the "sliding scale" toward affording New York more deference. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003). Accordingly, this factor weighs in favor of New York.

Under the second prong, "an alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Wamai*, 2023 WL 2395675, at *3 (citing *Pollux Holding Ltd.*, 329 F.3d at 70). This factor weighs in favor of Nestle, as it is plain that Switzerland is both "adequate" and "permits litigation of the dispute," as Nestle is incorporated in and has a business address located in Switzerland (SAC ¶ 3); and Nestle, through affidavit of Aline Novel, states that Nestle "is amenable to service of process in Switzerland," will "submit to Swiss jurisdiction," and "has previously litigated and resolved disputes concerning breaches of contract . . . through the Swiss legal system" (Novel Decl. ¶¶ 16-17). *See Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d

Cir. 2002) (holding that an alternative forum exists where the "alternative forum is [not] characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties").

Finally, as to the third private/public interest factors, there are witnesses and evidence that would prove problematic in litigating both in New York and Switzerland (*see* Def. Br. at 21-22; Pl. Br. at 25-26; Novel Decl. ¶ 18). However, "courts in this jurisdiction have still found against dismissing a case for *forum non conveniens* where the 'balance of the private interest factors is close,'" *Quantum BioPharma Ltd.*, 2026 WL 861678, at *14, especially in light of advancement in technology for depositions, flights, and "electronic storage and transmission," of documents. *Mars Advertising Europe Ltd. v. Young & Rubicam, Inc.*, No. 13-CV-00401, 2013 WL 1790896, at *7 (S.D.N.Y. Apr. 24, 2013). And, as to the public interest factor, at best, this factor is neutral, as Nestle has failed to bear its burden to show that the "balance of private and public interest factors tilts heavily in favor of the alternative forum." *See Olin Holdings Limited v. State*, 73 F. 4th 92, 110 (2d Cir. 2023) (quoting *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009)).

Accordingly, in light of the Parties' arguments and the factors at issue, and in considering that "great deference" is afforded to Plaintiffs' choice of forum here, Nestle's motion to dismiss for *forum non conveniens* is denied.

III. <u>Failure to State a Claim for Relief</u>

Plaintiffs' first and only Claim for Relief purports to bring a claim for breach of contract against Defendant. (SAC ¶¶ 37-40). Plaintiffs must plead the following elements to sufficiently state a breach of contract claim under New York law: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and

(4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citing *Tagare v. Nynex Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996)).[7]

Plaintiffs allege the following: Azoulai entered into contracts with Nestle, both through "its Paris-based branding agency, FutureBrand," and "on at least 20 occasions" with Nestle directly, to "produce visuals" and "provide iconography and other work's for Nespresso's use in branding campaigns and in its boutique stores"; Plaintiffs performed in accordance with the Purchase Order contracts by "duly provid[ing] the relevant visuals in compliance with the terms of each"; Nestle "breached their contractual obligations to Plaintiffs by continuing to use . . . the [] visuals outside of the usage duration as provided for in the Purchase Orders or relevant extension agreement"; and Plaintiffs were damaged by such actions, as the agreements at issue "contained terms for the payment of additional fees and penalties in the event that Defendants used Plaintiffs' visuals outside the usage rights prescribed." (SAC ¶¶ 7-8, 9-11, 13, 16-20, 37-40).

Nestle's principal arguments for dismissal of the breach of contract claim are as follows: (i) Plaintiffs fail to adequately plead the existence of a valid contract with Nestle; (ii) the "POs" referenced in the SAC both preclude the relief Plaintiffs seek and are expired, and thus are not actionable; and (iii) Plaintiffs' claim is time-barred as to the "majority of the alleged breaches at issue." (Def. Br. at 14-19). At this stage, the Court declines to dismiss Plaintiffs' breach of contract claim.

---

[7] The parties' briefs assume that New York substantive law governs Plaintiffs' breach of contract claim, thus "such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

First, Plaintiffs have sufficiently pled the elements of a breach of contract claim to survive Nestle's motion to dismiss. Plaintiffs' allegations, at their core, as pled in the Second Amended Complaint and detailed above, are straightforward and adequate, at this phase, to merit discovery.

While Nestle takes issue with Plaintiffs' alleged "failure" to identify the "major terms" of the alleged agreements at issue (*see* Def. Br. at 14-15), Plaintiffs' allegations, taken as true, "specifically allege[] that there was an executed contract," and "describe[] enough of the terms as to make out a colorable claim of breach," which is sufficient at this stage to survive Nestle's motion to dismiss. *See Dumont v. Litton Loan Servicing, LP*, No. 12-CV-02677, 2014 WL 815244, at *6-7 (S.D.N.Y. Mar. 3, 2014). Further, as the Court has already declined to consider the Annexed Purchase Documents in analyzing this branch of the motion to dismiss (*see supra*, Standard of Review, Sec. IV), the Court declines to consider Nestle's additional arguments invoking, explicitly or implicitly, the alleged contents of these documents as to whether Plaintiffs' claims have "expired" (*see* Def. Br. at 15-19; Reply at 6-7, 9-10).

Finally, and as to Nestle's argument concerning New York's six-year statute of limitations, the Court declines to dismiss Plaintiffs' Second Amended Complaint. Discovery may reveal that although some of Plaintiffs' alleged damages are barred by the statute of limitations, the Court cannot at the pleading stage make that determination. Therefore, the motion is denied as this time.

Accordingly, Nestle's motion to dismiss Plaintiffs' breach of contract claim on the merits is denied.

IV. <u>Leave to Amend</u>

Plaintiffs filed a "cross motion" for leave to amend and file a Third Amended Complaint but did not request the Court's leave to file this purported "cross motion," in violation of the Federal Rules of Civil Procedure and the Court's Individual Practices. Plaintiffs previously

requested leave to file a third amended complaint, which the Court denied by Order dated September 15, 2025. (Doc. 43). Nevertheless, the Court has considered the requested relief, and for the reasons set forth below, denies Plaintiffs' "cross motion."

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court has discretion to decline to give such leave where "there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Broadstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "a showing of delay that results in prejudice to the defendant can support denial of leave to amend," *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 14-CV-06566, 2019 WL 8165893, at *5 (S.D.N.Y. Oct. 9, 2019).

Plaintiffs argue that they should be allowed to file a fourth complaint, because "the contours of this dispute are [now] clear" as apparently, prior to this it was "not yet clear [to Plaintiffs] the extent to which Defendants would deny the scope of the Purchase Orders at issue." (Pl. Br. at 27). However, this reasoning falls short, as Plaintiffs have already amended the pleading twice, and the alleged "contours" were clear at the outset of the Parties' initial pre-motion letter writing—Plaintiffs certainly could have included quasi-contract claims from the start, yet chose not to. Allowing another amendment, at this stage, constituting what would be a *fourth* bite at the apple, would "indulge Plaintiff[s'] attempts at piecemeal pleading . . . while inflicting significant prejudice" on Nestle, an indulgence in which this Court refuses to partake. *Id.* (denying leave to amend, and noting that "pleading is not a game of skill of which one misstep may be decisive to the outcome, but neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges"); *see also Protex Industrial (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 256 (S.D.N.Y. 2024).

Accordingly, the Court declines to grant Plaintiffs leave to further amend the Second Amended Complaint.[8]

## CONCLUSION

For the foregoing reasons, Nestle's motion is DENIED and Plaintiffs' "cross-motion" for leave to file a third amended complaint is DENIED. Plaintiffs' claim shall proceed to discovery. Nestle shall file an Answer within fourteen days of the date of this Order. The Court will thereafter issue a Notice of Initial Pretrial Conference.

The Clerk of Court is respectfully requested to terminate the pending motions (Doc. 51 and Doc. 57).

**SO ORDERED:**

Dated: White Plains, New York
August 26, 2026

Philip M. Halpern
United States District Judge

[8] Additionally, Plaintiffs argue that they implicitly pled a claim for "breach of the covenant of good faith and fair dealing," as, in this context, it "need not be pled as a separate cause of action." (Pl. Br. at 23-24). However, the authority Plaintiffs rely upon for this argument does not, at all, stand for such a premise, as noted by Nestle. (Reply at 8 n.4). Instead, *Spencer-Smith v. Ehrlich* simply echoes the well-settled tenet that New York state law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." 347 F.R.D. 606, 627. Plaintiffs have not pled a separate claim for relief for implied covenant of good faith and fair dealing, and the only claim proceeding to discovery is the single breach of contract claim.